RECEIVED
IN ALEXANDRIA, LA

OCT 16 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

AUTRY LEE JONES                          DOCKET NO. 09-CV-0033; SEC. P
    BOP#52873-080

VERSUS                                   JUDGE DEE D. DRELL

USA, ET AL.                              MAGISTRATE JUDGE JAMES D. KIRK

### REPORT AND RECOMMENDATION

Before the court is a civil rights complaint filed pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics[1] by Plaintiff Autry Lee Jones, pro se and *in forma pauperis*. Plaintiff is an inmate in the custody of the Bureau of Prisons (BOP) and is currently incarcerated at the Federal Correctional Institution in Otisville, New York. However, Plaintiff's host of claims involve incidents that allegedly took place at the United State Penitentiary in Pollock, Louisiana, where Plaintiff was previously incarcerated. He names as defendants: United State of America, Condoleezza Rice, Harvey Lappin, Michael Atwood, H. Chain, D. Roach, D. Dixon, D. Lair, R. McGowan, and J. Flattery. Plaintiff is suing the defendants in their individual capacities only. [Doc. #9]

---

[1] In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C.A. § 1983.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### PROCEDURAL POSTURE & FACTS

Plaintiff's suit was filed in the United States District Court for the District of Columbia on April 3, 2006.  On December 18, 2006, Plaintiff moved to dismiss all of his claims against defendants in their official capacities. [Doc. #9]  An amended complaint was filed on February 29, 2008. [Doc. #43]  The defendants eventually filed a Motion to Dismiss or alternative Motion for Summary Judgment or alternative Motion to Transfer.  The court granted the Motion to Transfer, and the case was transferred to this district in January 2009.

Plaintiff seeks to collaterally attack his conviction by bringing a claim against the United States alleging that the one year statute of limitations for filing a federal habeas corpus petition is unconstitutional, in violation fo the First and Fifth Amendments to the United States Constitution.

Plaintiff also seeks to hold Defendant Condoleezza Rice liable for failing to respond to an alleged Freedom of Information Act request made by Plaintiff in October 2004.

Plaintiff alleges that, while incarcerated at USP-P, from December 16, 1997 through February 15, 2005, Defendants Lapin, McGowan, Lair, Dixon and Chain denied him equal protection of the

2

laws and due process regarding a disciplinary infraction that had to do with Plaintiff's prison employment, from which he was terminated.

Plaintiff complains that Defendants Chain, Lappin, and Roach retaliated against him for filing administrative remedy complaints by underpaying him and not permitting him to work overtime, thereby depriving him of equal protection and due process.

Plaintiff also complains that Defendants Lappin and Atwood spent funds from the Inmate Trust Fund on over one thousand items, none of which benefitted the inmate population as a whole. This resulted in an inmate telephone rate increase to 23 cents per minute.

Plaintiff seeks injunctive relief in the form of a revocation of his termination from Unicor (his prison job), an order directing Defendants to provide him back pay, an order commanding Lappin and Atwood to replace all money spent from the trust fund that did not benefit the inmate population as a whole, an order reducing the prisoner phone rate from 23 cents per minute to 7 cents per minute, expungement of his incident report regarding unauthorized possession of out-count slips, an order commanding each defendant to perform nine hours of community service, and an order for Defendant Rice to release records regarding "how the government has determined to stop discrimination in the U.S. justice system." Plaintiff seeks compensatory damages in the amount of $9,999.99

3

from each of the following Defendants - Chain, Roach, Dixon, McGowan, and Lair.

## LAW AND ANALYSIS

Pursuant to 28 U.S.C. §1915A, the court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a governmental entity.    On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A.

## 1.    Statute of Limitations

Plaintiff alleges that the one year statute of limitations for filing a federal habeas corpus petition is unconstitutional, in violation of the First and Fifth Amendments to the United States Constitution.    First, to the extent that Plaintiff seeks to collaterally attack his conviction or sentence, he cannot do so in a Bivens claim; such a claim must be filed as a habeas corpus petition.   Even if he is not attempting to attack his conviction, it is well-settled that the one year statute of limitations is constitutional; it does not unconstitutionally suspend the writ of habeas corpus.    See Rojas v. Cockrell, 44 Fed.Appx. 652 (5th Cir.

4

2002)(citing <u>Lucidore v. N.Y. State Div. of Parole</u>, 209 F.3d 107, 113 (2d Cir.)("[B]ecause AEDPA's one-year statute of limitations leaves habeas petitioners with some reasonable opportunity to have their claims heard on the merits, the limitations period does not render the habeas remedy 'inadequate or ineffective to test the legality of detention,' and therefore does not per se constitute an unconstitutional suspension ....")(citations omitted), *cert. denied*, 531 U.S. 873 (2000). Finally, Plaintiff previously raised this same claim in at least one prior action. <u>See</u> <u>Jones v. Tapia</u>, 86 Fed. Appx. 781 (5th Cir. 2004)("Jones argues that (1) he has been denied his First Amendment right to petition the courts... and (3) he is actually innocent."). For all of these reasons, Plaintiff's claim should be dismissed.

**2.   Freedom of Information Act**

Plaintiff alleges that he submitted a Freedom of Information Act (FOIA) request in October 2004, but never received a reply. He seeks a court order directing Condoleezza Rice to produce unnamed documents. It is well established that prior to seeking judicial review pertaining to FOIA requests, administrative remedies must be exhausted. The Fifth Circuit in <u>Hedley v. United States</u>, 594 F.2d 1043 (5th Cir. 1979) held that "exhaustion of administrative remedies is a general prerequisite to judicial review of any administrative action," despite the fact that FOIA does not expressly provide for such a requirement. <u>Id.</u> at 1044.

5

Plaintiff alleges that he mailed an FOIA request[2] to Colin Powell on October 26, 2004, which was signed for by an unidentified person on November 8, 2004.  [Doc. #1, ¶2; Doc. #43, Exhibit 1] Plaintiff's exhibit 1 indicates that Plaintiff mailed his purported request to Colin L. Powell at 2201 C. Street NW, Washington, DC 20001.  However, as of October 2004, the Department of State regulations required that FOIA requests be mailed to "Information and Privacy Coordinator, Foreign Affairs Information Management Center, Room 1239, Department of State, Washington, D.C. 20520." See 22 C.F.R. §171.2(b)(2004 ed.).  On November 3, 2004, the rule was changed such that request should be mailed to Information and Privacy Coordinator, U.S. Department of State, SA-2, 515 22nd Street, NW, Washington DC 20522-6001.  See C.F.R. §171.5(a)(2005 ed.).  Based on Plaintiff's allegations and exhibit, Plaintiff did *not* mail his request to either of these addresses.  Therefore, Plaintiff could not have exhausted his FOIA claim, and any allegation by Plaintiff that his request was properly submitted to or received by the Department of State is conclusory.

Plaintiff complains that USP-P did not have the Codes of Federal Regulation, so he could not have known the relevant provisions. Plaintiff states that he was provided a copy of the applicable sections once he learned of them, so he could have

---

[2]Plaintiff states that his letter asked the Secretary what, if anything, had been done to correct the discrimination in the United States justice system. [Doc. #43]

6

resubmitted his request by mailing it to the appropriate address. Plaintiff does not allege that he ever sent his FOIA request to the proper party, even after he learned who the proper party was.

Finally, Plaintiff seeks documents showing how the government "has determined to stop discrimination in the U.S. justice system." This request is completely vague, so even if the Defendants had failed to respond, it would probably not establish a valid FOIA claim anyway. Plaintiff's FOIA claim should be dismissed.

## 3.   UNICOR Termination

While Plaintiff was incarcerated at USP-P, he began to work for UNICOR, a government corporation providing federal inmates the opportunity to work. 28 U.S.C. §4121, et seq. Plaintiff complained to Defendants about the manner in which overtime pay was calculated. Plaintiff alleges that the defendants then took him off of the overtime list. Plaintiff alleges that after he filed an administrative remedy regarding the overtime pay and his removal from the overtime list, he was terminated from his UNICOR job. Around that same time, Plaintiff was found by Defendant Dixon to be in possession of six pages of official "out-count" forms, apparently in violation of prison rules. Plaintiff received an incident report for the violation.

Plaintiff claims that he was wrongfully terminated from his UNICOR job and that his disciplinary write up was in retaliation for filing a grievance. He also complains that his due process

7

rights were violated by Defendants through the wage calculations and by terminating his employment with UNICOR. Finally, he complains that he was denied equal protection of the law because other inmates were in possession of the forms also, yet they did not get written up.

A.  Due Process

Plaintiff complains that his due process right was violated in the calculation of his overtime pay and in terminating his employment with UNICOR. Due process imposes constraints on governmental decisions that deprive individuals of life, liberty or property interests. In <u>Bulger v. U.S. Bureau of Prisons</u>, 65 F.3d 48, 50 (5th Cir. 1995)[3] the Fifth Circuit held that inmates do not have a constitutional right to prison employment that would entitle them to due process protection. Because Plaintiff was not entitled to due process, he does not raise a constitutional claim. Moreover, Plaintiff suffered no atypical or significant hardship in relation to the ordinary incidents of prison life as a result of the termination.  <u>See Sandin v. Conner</u>, 115 S.Ct. 2293, 2301

---

[3]In <u>Bulger v. U.S. Bureau of Prisons</u>, 65 F.3d 48 (5th Cir. 1995), the Plaintiff had a UNICOR work assignment in the shipping office, and he asked to be reassigned to another position that had become vacant. The supervisor denied the request, gave inmate Bulger a poor work performance evaluation, and told him that he was being terminated from UNICOR.  Bulger was told there were no other UNICOR jobs available.  However, one week later, several other inmates got UNICOR positions.  Plaintiff filed suit claiming that his firing was unjustified, in violation of UNICOR regulations, and in violation of his due process.  Although Bulger argued that the language in 28 CFR 345.12(d) created a liberty or property interest, the Fifth Circuit disagreed, citing <u>Sandin v. Conner</u>, 115 S.Ct. 2293, 2301 (1995), because no atypical or significant hardship in relation to the ordinary incidents of prison life resulted in the termination.

(1995)(No due process protection because no atypical or significant hardship in relation to the ordinary incidents of prison life).

Plaintiff complains that the defendants used "trickery" to make him believe that he would be paid per item produced on Saturdays. [Doc. #43, p.34] However, Plaintiff does not have a constitutional right to be compensated *at all* for work performed while incarcerated.  Wendt v. Lynaugh, 841 F.2d 619, 521 (5th Cir. 1988).  Plaintiff has failed to present non-conclusory allegations that he has a constitutionally protected liberty or property interest in employment with UNICOR or a specific rate of pay for overtime work.  A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  See Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995); see also Sias v. Louisiana 146 Fed. Appx. 719 (5th Cir. 2005)("Sias's allegations are vague and conclusory and are therefore insufficient to establish a 42 U.S.C. §1983 claim.") (citations omitted); Elliott v. Perez, 751 F.2d 1472, 1479 (5th Cir. 1985)(A plaintiff may not plead merely conclusory allegations to successfully state a section 1983 claim, but must instead set forth specific facts which, if proven, would warrant the relief sought. (citations omitted)) Plaintiff's claim should be dismissed.

Finally, Plaintiff complains that he was denied due process with regard to his disciplinary proceeding and conviction.  He

9

seeks monetary damages and the expungement of his disciplinary conviction. Plaintiff's due process claim regarding the disciplinary proceeding is also barred by Sandin v. Connor, 515 U.S. 472 (1995). The due process clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner. Id. at 478. If Plaintiff lost no good time, then he has no federally protected due process rights in connection with the proceedings. Plaintiff does not allege the loss of good time by virtue of the disciplinary charge. Losing a prison job is not an atypical or significant hardship in relation to the ordinary incidents of prison life. See id. at 483.

B. Equal Protection

Plaintiff complains that he was denied equal protection because other inmates were in possession of out-count slips, too, yet they did not get written up. To state an equal protection claim, Plaintiff must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent. Taylor v. Johnson, 257 F . 3d 470, 472 (5th Cir. 2001). Here, Plaintiff does not allege that he is a member of a protected class or that any fundamental right was violated, so he must show that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest. Weiler v. Purkett, 137 F.3d 1047, 1051

10

(8th Cir. 1998). He also must show intentional or purposeful discrimination. Plaintiff has not alleged that his write-up was the result of any kind of discrimination. Moreover, Plaintiff's allegation that other inmates had out-count slips and did not get the same punishment is conclusory. Plaintiff's equal protection claim fails.

C. Retaliation

Plaintiff alleges that he was taken off of the overtime list after he complained about the manner in which overtime pay was calculated. He also claims that he received a disciplinary report after filing a grievance regarding overtime. Plaintiff alleges that the defendants acted with retaliatory intent.

In Jones v. Greninger, 188 F.3d 322 (5th Cir. 1999), the Fifth Circuit expressed the law on retaliation as follows: To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Jones, 188 F.3d at 325-26. The Court went on to note that if the inmate was unable to point to a specific constitutional right that was violated, the claim would fail.[4]

_____

[4]In the Jones case, inmate Jones complained that he was retaliated against for filing grievances, and the retaliation took the form of limiting his right of access to court. This limitation involved a transfer to work in food service, so his legal research time would be limited to five hours per week. The Fifth Circuit held that there was no constitutional violation inherent in a limitation of law library access time to five hours per week;

In <u>Tighe v. Wall</u>, 100 F.3d 41 (5th Cir. 1996), the Plaintiff's prison job was inmate counsel. He was fired from the job, and Plaintiff claimed it was due to retaliation. The Fifth Circuit held that a plaintiff must allege a violation of a constitutional right and demonstrate a retaliatory motive to support a retaliation claim. Although Tighe argued that his First Amendment right of free speech included the right to give legal assistance to fellow inmates, and that he was removed from his job as inmate counsel and transferred to another prison in retaliation for exercising this right, the Fifth Circuit disagreed. Instead, the Court held that prisoners have no constitutionally protected interest in a particular facility **or a specific work assignment.** Ultimately, the Fifth Circuit concluded that Tighe had failed to show the violation of a constitutional right, and so his retaliation claim failed. <u>Tighe</u>, 100 F.3d at 43.

In this case, as in <u>Tighe</u>, Plaintiff has failed to allege the violation of a constitutional right. Just as <u>Tighe</u> enjoyed no constitutional right to his prison job, which the Fifth Circuit made clear in <u>Bulger</u>, *supra,* Plaintiff has no constitutional right to continued employment with UNICOR. Thus, for the reasons discussed in this and the preceding sections, Plaintiff's removal from the overtime list and ultimate removal from UNICOR did not

---

consequently, the Court said, because Jones had failed to show that the Defendants had engaged in conduct that will result in a violation of his right of access to court, his retaliation claim fails. <u>Jones</u>, 188 F.3d at 326.

violate any constitutionally protected rights.[5]

To the extent that Plaintiff claims he was written-up in retaliation for exercising a constitutional right, his claim also fails.   Plaintiff has presented no more than a conclusory allegation that Defendants acted with retaliatory motive.   See Jones, 188 F.3d at 325-26.  Plaintiff was written-up for wrongful possession of "out-count" slips, and was found guilty after a hearing by the United Disciplinary Committee.  Moreover, Plaintiff does not deny that he was in possession of these slips.   Thus, based on Plaintiff's own allegations, it is clear that he was written up for possessing contraband, not in retaliation. Plaintiff has not alleged facts that form the basis for a retaliation claim, and the claim should be dismissed.

### 4.   Inmate Fund

Plaintiff complains that Defendants misappropriated funds from the Inmate Trust Fund, which resulted in an increase in the telephone rate.  Profits from the sale of commissary items are placed in a special fund to be held in trust for disbursement with the approval of the Director of the Bureau of Prisons for any purpose accruing to the benefit of the inmate body, as a whole, such as amusements, education, library, or general welfare work. See Washington v. Reno, 35 F.3d 1093 (6th Cir. 1994).  Plaintiff alleges that the defendants spent Trust Fund money on 1,020 items

---

[5]Plaintiff was rehired by UNICOR in December 2005.

13

that did not benefit the inmate population including "Labor Law Attorneys, Security Background Investigation, Air Lift Food and Medical, Executive Office Director, Health Service, non BOP Medical, Prison Industries, Motor Pool, National Bus. Ops Food, National Bus Ops Custody, CMS Renovation, BOP Archives, Locksmith/Armory, Uniform Clothing, Facility Management, Power Plant, Staff House Maintenance, Narcotic Surveillance and more...." [Doc. #1, p.4]  Plaintiff does not provide any factual assertions as to the meaning or significance of these categories or how these expenditures did not benefit the inmate population.  Public Law 105-277, Div. A, § 101(b) [Title I, § 108], Oct. 21, 1998, 112 Stat. 2681-67, provided that: "For fiscal year 1999 and thereafter, the Director of the Bureau of Prisons may make expenditures out of the Commissary Fund of the Federal Prison System, regardless of whether any such expenditure is security-related, for programs, goods, and services for the benefit of inmates (to the extent the provision of those programs, goods, or services to inmates is not otherwise prohibited by law)...."  Plaintiff has provided only conclusory allegations that trust fund money was spent improperly; specific facts demonstrating a constitutional deprivation have not been set forth and plaintiff may not simply rely on conclusory allegations.

5.   **Medical Care**

Plaintiff alleges that on August 17, 2003, Defendant J.

14

ordered x-rays of Plaintiff's back.  Plaintiff alleges that the x-rays showed spurring on the left paraspinal area at L1-L2.  Plaintiff claims that Defendant Flattery refused to correct the spurring and that Flattery refused to treat Plaintiff for Hepatitis C. [Doc. #1 & #43, p.12]

According to administrative remedy forms, Plaintiff complained on March 3, 2004 that the defendants were not doing the "proper test" to determine if he had kidney problems. [Doc. #31, Exhibit 9] He also claims that he should have been "called out" to medical on March 2, 2009, but he was not on the call out list for that date.  On April 9, 2004, Plaintiff was evaluated by the staff physician for his complaint of flank pain.  Laboratory tests and an x-ray of Plaintiff's kidneys, ureters, and bladder were ordered.  The lab tests and x-rays revealed no evidence of a kidney problem.  Plaintiff was seen again on April 23, 2004, at the chronic care clinic, and he did not report any more flank pain. [Doc. #31, Exhibit 10]

To prevail under 42 U.S.C. § 1983, Plaintiff must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution.  "Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate ... medical care.'" Easter v. Powell, 467 F.3d

459, 463 (5th Cir. 2006) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" Easter, 467 F.3d at 463 (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle v. Gamble, 429 U.S. 97 (1976)). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir.1997) citing Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Plaintiff underwent a battery of tests, which revealed no kidney problems. After his medical tests, Plaintiff made no further complaints of pain. Plaintiff has simply not presented allegations of deliberate indifference by the defendants regarding his complaints of pain. Nor had he alleged a serious medical need, as the test results were negative for kidney problems. Additionally, according to the record, Plaintiff was a regular patient at the chronic care clinic. He presents no factual allegations of being denied care for Hepatitis. He has filed a complaint, amended complaint, and two oppositions to Defendants' first and second motions to dismiss, but nowhere in these documents does Plaintiff present an occasion where he sought medical care for Hepatitis and was denied care.

16

Finally, Plaintiff fails to state a claim for monetary damages because he does not allege an actual injury resulting from the alleged denial of medical care.   See 42 U.S.C. § 1997e(e) (precluding a civil action by a "prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury"); see also Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (noting that 42 U.S.C. § 1997e(e) requires physical injury before a prisoner can recover for psychological damages).

### CONCLUSION

For all of the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's complaint be **DENIED AND DISMISSED WITH PREJUDICE**, in part as **frivolous**, and also for **failing to state a claim upon which relief may be granted** under 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

**Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court.   A party may respond to another party's objections within ten (10) days after being served with a copy thereof.**

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date**

of its service, or within the time frame authorized by Fed.R.Civ.P.
6(b), shall bar an aggrieved party from attacking either the
factual findings or the legal conclusions accepted by the District
Court, except upon grounds of plain error.  See Douglass v. United
Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana, this _16th_
day of _October_____, 2009.


JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

18